You may proceed, Counsel. Thank you, Your Honor. Evan Tager, representing DIRECTV, and I'd like to try to reserve five minutes for rebuttal. All right. Please watch the clock. Yes, I'll try. I'd like to start with a brief overview, sort of, to review the bidding in terms of all the different arguments. We've offered, as the Court knows, multiple arguments for overturning the summary judgment in whole or in part. And as the 28J letter indicates, dynamics and Vasquez remove one arrow from our quiver. Together, they establish that plaintiffs are not independent contractors for purposes of their claims based on California wage orders. All of our other arguments, however, remain alive. Were any of those other arguments considered by the District Court? They weren't because the Court didn't have the benefit of Dynamax, right? In other words, what you're really saying is, what you said in your briefs and what you say to us is, if Dynamax applies, and we now know it does because of Vasquez, we have lots of ways to get out of it. And the District Court was never confronted with those arguments because it thought that prior law applied. Right, the District Court rejected our arguments on their merits. Well, no, no, it rejected your arguments applying a different framework. It applied the independent contractor framework that was roughly equivalent to federal law, not the new one that Dynamax comes up with. Yes? Yes. So my short question is, why not, on the Dynamax issue, simply say, we've got new law that's been said to be retroactive. We don't know, on the facts of this case, who wins or loses under that law. District Court, go back and tell us. Well, I think, Your Honor, that we'd be back in the same place. The District Court's opinion so clearly gets out ahead of itself and decides issues of fact and issues of degree that the outcome would be a foregone conclusion. If we remand the case, it's just going to come right back and say— We're always here. Our business is open. So the fact that a case may come back after we remand it isn't a good reason for us to take up issues in the first instance, is it? Well, some of the issues are entirely independent. I mean, the one thing that's not going to happen is the District Court's going to suddenly say, things got better for you guys, and now we're going to have a trial. So I think what I need to do is to explain to you why it was error for the court to decide these issues for itself, given— No, I'm conceding for a moment that the court applied the wrong legal framework to your issues. And let me give you even another part that may make you feel better. Let's assume for purposes of discussion that the court erred on the federal side, that there really were questions of fact. Okay. And that we have to send it back for that reason anyway. If that were true, wouldn't we just send back the Dynamax claim at the same time? Well, certainly if we're remanding on the federal, you could ask the District Court to reconsider the Dynamax. I think that— See, what you're saying to us is that even if we remand on the federal, we should rule in your favor on the Dynamax claims by limiting Dynamax to its facts in the first instance when no other court has had an opportunity to try to do that. I'm as activist as anyone, but that sort of strikes me as a bridge too far. I'm not asking you to limit it to its facts. We agree that under Dynamax, we can't argue the independent contractor point for the wage orders. So we're saying it doesn't apply to the non-wage order claims. For that, it's the same analysis that the District Court actually applied. And then there's a separate inquiry, the joint employer inquiry, which remains alive and which we also lost in the District Court. Well, that's the instruction that's particularly important to you because that argument that the District Court, both on the FLSA claim and the California claim, ignored that initial employee independent contractor issue and went directly to the joint employment issue, that's a mistake from your point of view common to both. And you want us to tell the court that, correct? Yes, Your Honor. And I think the case law supports that, including the Curry decision, which is a decision the California Court of Appeal, which of course this court is supposed to look at. Even if it does support it, as I understand your position on the federal side, you're saying there's a question of fact that calls for trial. Multiple questions. Okay. So if that's true, aren't there questions of fact that call for trial on the other side? Absolutely. So I don't understand why you're asking us to interpret Dynamax if there's going to have to be a trial anyway. I'm not sure I would characterize it as asking you to interpret it. I was just trying to parse out what, you know, what parts, you know, what applies to what. So what should our bottom line from your view be? What should the dispositive language in our opinion be? The case is remanded for a trial on the following issues. Whether or not the technicians are independent contractors for purposes of federal law and the non-wage order claims. If so, whether or not DirecTV is their joint employer. If so, whether or not DirecTV had sufficient knowledge to be held accountable. I've never seen the last paragraph of an opinion. I mean, what you want us to do, this is what I'm asking. Do you want us to remand for trial on both claims or only on one claim? Everything. Excuse me? Everything. All the claims would have to be remanded for trial because Dynamax does not entitle them to judgment on any claim. Well, but that's what I was asking. It doesn't entitle you to judgment either, does it? So conceded. Okay. So assuming on the Dynamax issue, then it seems to me the simplest thing is to say, we now have a new world and this has to go back to the district court. If they want to argue to the district court, they get summary judgment under Dynamax, so be it. We don't have to give the district court advance advice on that. So to my mind, that takes Dynamax out of the equation and now we have to turn to the federal claims. So why is there a question of fact on the federal claims? Okay. So I'd like to make one big picture point and then get to the granular stuff. And the big picture point is this. There's a question that there's a who decides question that is sort of embodied in this whole issue. There are basically three different tasks here. There are any questions of actual historical fact or inferences therefrom, of course, have to be decided by a jury. The next question is all of these factors, federal and state, are matters of degree. The plaintiffs even affirmatively argue that in their principle brief. They're saying these are matters of degree. So my metaphor for you, if you will, is an equalizer from a stereo where you have all of these different, you know, knobs and they slide up and down and you can move them anywhere on the spectrum. And the question of where the facts place a particular factor in these multifactor tests is a second task. And we know from the decision in Orion, which is cited in our opening and reply briefs, that when you have these multifactor tests and you have disputes over where on the spectrum to place that factor, that should be resolved by a jury. So I'm trying to imagine what the special verdict form would look like. Well, and here's the good part. Under Orion, and this is basically this court adopting what Judge Easterbrook had said in a concurring opinion. Once you know that there are these factors that have to be resolved by a jury, you throw the ultimate issue to the jury too. So at the end of the day, under Orion, so long as there are either disputes of historical fact and or disputes about where on the spectrum, what degree of control, for example, which could be some 0 to 10 in any particular case, and all of these other multi, you know, all these other factors, those things have to be decided by a jury under Orion. And then because they do, you throw the ultimate issue to the jury as well. When you say the ultimate issue, you're referring to the totality of the circumstances part of the analysis. Is that correct? Yes, Your Honor. So my sense of the case is that there really aren't a lot of disputes about historical facts. I mean, the question of what the installers, what kind of, did they have to buy tools to do this own work? What did they have to wear when they carried out the job? I mean, that kind of stuff doesn't seem to be in dispute. It's really how that all comes together under a totality of the circumstances. Isn't that really? I think there are some disputes. To give you one example, there's a big fight over the CBEL system, this database, which is used, we say, for scheduling. They say it can be used, you know, to determine whether these technicians are working overtime and whether they're being paid properly. And it affects multiple factors and multiple different issues of law. So, you know. Is there a dispute? I thought there was a dispute, reading this record, between whether technicians had the actual ability to turn down jobs as opposed to the mere theoretical ability. Is there a dispute on that fact? Well, let's say there's a dispute. Certainly, the contractual arrangement makes it look as if they have the ability. And I'm glad you asked me this question because one thing I would beg you to do is to read the testimony of the four principals of the contracting companies who testified and that are in the ER, Gibson, Perez, Yang, and Shropshire. They make it so abundantly clear that they reassign work orders all the time. Daily, one of them said. Right. And I don't think there's any dispute in the record that work orders are reassigned. I was trying to ask a different question. Is there any dispute in the record about whether they are reassigned because an individual technician says, I don't want to take that particular job? Absolutely. Well, basically what they do is they just don't acknowledge it, right? The testimony is in the same testimony I referred to. The way it works is the work orders will come in to the contracting company. They will send them out. And when they come in, they're specified to a specific technician. Correct. We all know they send them out. When the technician says, either doesn't respond or says, I'm busy today. Precisely. Is there evidence in the record of what happens then? Yes, that's exactly what they said is we will reassign them if they do not acknowledge them. That's how they basically reject the assignment. I understood that the other side put evidence in the record from people who said, look, if you turn them down, you get fired. You have to take them. Wasn't there a declaration that said something like that? Possibly. I'm not remembering it, Your Honor. But there's certainly people who admitted that they would duck work orders if they didn't want to do them. So let's just say there's a dispute of fact. I'm not here to try to get summary judgment. I'll take a dispute of fact. You did try it down there and it didn't work. Down there, yes. It didn't work. No, it didn't. But let me use that as a segue to one other point. There are 14 cases cited between the two parties on involving claims by installers against either DirecTV or the contracting company. In 13 of those cases, the defendant, whoever it was, either got a summary judgment or the court held that there was a dispute of fact for trial. In only one, the Perez case on which they heavily rely, was a summary judgment imposed against either, well, in that case, DirecTV. So it's a 13 to 1 disparity, which I think is a very compelling indication that this case should never have been decided on summary judgment. There are just too many matters of degree, as Your Honor said, plus the historical facts are not, you know, there are disputes of historical fact on top of that. Counselor, one of your arguments is that the district court made a primary error in not going through this two-step analysis. First, do we have employees or independent contractors? If an employee, is it joint employment? But there's a certain common sense justification for what the court did in this sense. It seems to me there is a lot of overlap in the factors that one can identify in the employee-independent contractor test and then in the joint employment test. I mean, they both look at the nature of the work that the individual does. They both look at the relationship between the individual and the employing entity. So if there's so much redundancy between the two, why go through that two-step analysis? Well, I think conceptually it's clearer and it avoids the kind of analytical errors that the district court made by combining them. If it were the case that you were clear about, you know, who you're focusing on for each of these factors and you're getting it right, you might be able to combine them. But I think what we had here was conceptual errors about, you know, first we're looking at the technician in relation to the contracting company and how much freedom of action did the technician have vis-à-vis the contracting company. But then we're talking about, you know, how much control did DirecTV have? And it seems to me it's just much simpler to say, how much independence does the technician have? Let us figure out first whether that person is an independent contractor. Once we know the answer to that question, we can then say, okay, is DirecTV his employer? Now we focus on how much control was exercised by DirecTV as opposed to the contracting company. But counsel, for example, the question of how much freedom does the installer actually have, in assessing that, don't you have to actually look at the relationship between DirecTV and the contracting companies? Because I think the argument is that DirecTV is essentially telling the contracting companies how they are supposed to relate to the employees. So it seems like it's a kind of odd, abstract exercise to exclude DirecTV from that control analysis as an initial proposition. Well, I think if you look at it from the perspective of the technician, you could take into account, you know, what constraints have been placed from whatever source. But then you have to sort of separate it out, because it could be that those constraints are actually imposed by the contractor. Yeah, but the difficulty, and I take your conceptual point, it makes a lot of sense to look at this and say, well, if they're not employees of the contractor, they can't be employees of DirecTV. But if we have, if combining everything together, they have all the attributes of employees, they're being told, then it seems to me, I'm not sure that I need to necessarily conclude that they were employees of the contractor, but whether they were treated as employees, and if so, whether they were subject to DirecTV's direction. So is it a necessary analysis or just a useful analysis? I would say it's useful so long as you are sufficiently clear when you're performing it. Because you initially said something that made some sense to me. It makes conceptual sense to address it in two steps, but it may not be necessary. Your fear was that because the district court didn't address it in two steps, it missed the central part of an analysis. Yeah, and, you know, I think the bigger problem, of course, was the district court was basically acting as a fact finder. And regardless of whether it did two inquiries or one, I just think it just consistently made decisions about degree that weren't for the court to make, and historical fact. So I think that's really the most fundamental problem. You know, if we have to have a single set of 15 factors as a test, you know, we'll live with it. We think it's better to separate them, but I think the bigger problem is that these things never should have been decided by the district court in the first place. All right. Cancel. You wanted to save five minutes, and you're down to less than one, so we'll let you. I'm sorry about that. You've done better than everybody today who wanted to save five minutes. I see a pattern here, right? Good morning. May it please the Court. My name is Toji Calabro. I represent the plaintiff at Pelleys and across the Pellants. I'd like to reserve two minutes of my time, if I could, for review. Oh, is your co-counsel arguing? Well, we're across the Pellants. Do it all together. Do it all together, but you don't reserve time. So the primary question before the Court is whether DIRECTV employed plaintiffs as a matter of law. So let's take the Dynamax test. Let's do it. Don't we have to remand for trial on Dynamax? We don't, and I'll tell you why. The reason is that the Supreme Court, the California Supreme Court, decided Martinez against Combs in 2010 and enunciated the software permit test. We don't find facts. The district court never considered this test. I have no idea how this test would apply to your clients. You can convince me that you're likely going to win under that test. I think you probably are. But why should we address that? Everybody wants us, of course, to give them a win while they're here. But why don't we just send back the Dynamax thing to them? And if you want to file a motion for summary judgment down there, you can. Dynamax narrowed in employers' favor the Martinez against Combs test. It made it easier for the defendants to win than under Martinez against Combs that the district court decided. Martinez against Combs was a case where they announced this. Oh, no, but it made the test quite different. Your Honor. The test is now three-specific factor-based. The suffered language hasn't really even been interpreted. Well, respectfully, Martinez against Combs decision did enunciate the software permit test. And what happened was is that people argued that it was way too broad. So in Dynamax, the court narrowed the test and said, okay, if you can now. Put aside Dynamax. Just even applying the law, it did. Didn't this district court make a lot of findings of fact? Your Honor, I think Justice Lopez was right. I mean, Judge Lopez was right that there weren't that many disputes of fact. I mean, here are some of the disputed facts. They were the face of DirecTV. They were an integral part of DirecTV's business. They did the same work as DirecTV's employees' technicians. DirecTV had to specifically authorize each individual technician before he could do work for DirecTV. These technicians. That's not true. They had to have training that was approved by DirecTV, but the assignment could be given by the subcontractors, if you will, or by the other employer under your theory to anybody. Anybody who met the qualifications for DirecTV, correct? Could assign it, but they couldn't do any DirecTV work unless DirecTV specifically authorized this particular person to do work. So could each of these people do work for other contractors? It depends on how you read. There's certainly evidence that they could and did. But not as part of their jobs through these contracting companies, right? So your argument is that they were employees only to the extent that they did work for DirecTV, but they were independent contractors otherwise. No, we don't claim that they were independent contractors otherwise. We claim that, sure, they might have had one-off jobs where they were moonlighting once or twice. You can have a second job. Well, in fact, nothing in the arrangement here prohibited that, did it? It did, actually. In the SPA, there is an exclusivity provision in it, and it says that. Yeah, that's for the third-party contractors. There's no exclusivity provision for the technicians, is there? Well, yes, because the way that we read the contract is that it includes your affiliates and other people that work with you. Tell me where the contract says the technicians can't work for other people. Sure. If you just look at paragraph 10, I believe, of the SPA. What, services provider agreement? Yes. Okay. So if you look at ER1036, exclusivity, due to the fact that the contractor will have access to customer information and other DirecTV confidential information as defined below. The contractor, neither it nor its parent entities, the technicians are not those, subsidiaries. Do you think that the word affiliates describes its employees? Well, remember that they're not recognized as employees, number one. Well, you're saying they are, though. So tell me, you think this word affiliates, which one would normally use to – it's in a clause that says parent entities, subsidiaries, or affiliates. You think the third – let me finish. You get to talk, too. The third part of this, parent companies, subsidiaries, or employees who work for you, that's what affiliates means? In this context, because of the way that they are defining subcontractors. As a second argument, Your Honor, look at ER1056, right, and it says in this paragraph B regarding subcontractors, contractor shall cause such subcontractors to comply with and abide by the terms, conditions, and restrictions opposed upon contractor as set forth in this agreement, including all attachments and exhibits related thereto. So every obligation of a contractor also applies to the subcontractor. So if the subcontractor in this case, the contractor, third-party contracting company, hired a plumber to do work for DirecTV? Well, that's not – you should read it in the context of this. That's – they can't mean that, can it? Yes, Your Honor, because this specific paragraph is talking about hiring subcontractors to perform services under this agreement. And that's why – that's what subcontractors mean. And subcontractors, therefore, may only work for DirecTV? Is that what you're saying? In the performance of – well, look at what paragraph 10 says. Paragraph 10 says that you can't perform services for competitors of DirecTV. So when these guys – But the contractor can. Right. So the contractor can't do it under this agreement, and because of – if you hire any subcontractors, the subcontractors have the exact same obligations. So they are bound by exclusivity in the contract. And the evidence isn't the record that I think is understood. So you're confusing me because your argument is that they're employees, not independent contractors, so how can they be subcontractors? Well, they are considered subcontractors in the terms of this agreement. They aren't actually recognized as employees by the contracting companies, right? What they are done is they are called subcontractors, and that's what the contracting companies call them. And DirecTV's position is that they're independent contractors, right? So these people are not getting W-2s, for example. They're not having taxes withheld. They're getting 1099s as subcontractors, right? And what's – and this paragraph talks about this. This is the paragraph that says, look, you have to get an approval from us. And it's not limited to just safety or these certifications. There's no qualifier. It says you have to receive an approval from DirecTV, which approval may or may not be granted in DirecTV's discretion. Did the district court make a finding on this issue as to whether the individual installers are free to work for competitors of DirecTV? I think the district court said – and correct me, I mean, I may not be correct on this, but he noted and credited DirecTV's evidence that there were technicians who did other work. Yes. But he said the contracting companies are bound. And I think that was an astute observation. And the contract's clear on that. The contracting companies are not allowed to work for anybody else. Right. So – but you're not – this is not a case about whether the contracting companies are employees. This is a case about whether the technicians are employees. Right. So the fact that the judge recognized that the technicians did work for other folks and nobody complained about it, doesn't that at least suggest there's a question of fact about whether they're employees? No, Your Honor, because of the other undisputed facts. Remember, this is the totality of the circumstances inquiry. You don't have to be an exclusive provider to be an employee. We're not claiming time for the one or two jobs that a plaintiff might have done on the side. If I have a day job during the day and then I have a second job at night, that doesn't mean I'm not an employee during my day job. Okay. So let me ask you Judge Lopez's question about that. Did the district court find that they had, in effect, two jobs? I know it's your characterization of what occurred here, but did the district court make that finding, that they were employed by DirecTV to the extent they worked for DirecTV and they were not employed by DirecTV to the extent they worked for other folks? I don't think he made that explicit, but that's implicit because that's all we're claiming for. We're not claiming overtime for times that they worked for other folks. All we're doing is claiming the time that they worked on DirecTV installations, which in the evidence in the record, which is undisputed, it was full-time work for these guys. Counsel, I guess we're spending a lot of time, the freedom that they had, if they had such freedom, to work for other companies on installations. I mean, that's an important fact, if you will, on the employee-independent-contractor issue, and it sounds to me like the competing arguments indicate there's a dispute of fact about that, which would suggest perhaps that summary judgment, particularly on this issue, was inappropriate. There's a dispute about it. Well, there's not a dispute about the number of jobs that were done. It's undisputed that they did one or two jobs during their entire period of working with DirecTV for somebody else. Every individual? Right. There's no evidence that any of these plaintiffs did any substantial work for anybody else. There was, like, an odd job that somebody helped out at the gym, or there was other people. Well, there's some evidence that they installed satellites for competitors, isn't there? There is some evidence that some guys did. Not just worked out at the gym, but did work for DirecTV. No, I'm sorry. They installed equipment at a gym. Okay. Fair enough. Sorry. I'm sorry if I wasn't very clear about that. Yeah. Yeah. But, look, but, you know, remember, that's just one factor. All of these other facts are undisputed, that they have the unfettered discretion to hire and fire these folks, that they are the face of DirecTV, that they are integral partners. Tell me about the unfettered discretion to hire and fire. Many people give their independent contractors specifications. So I'll hire you to be my plumber, but before you send anybody to work for me, you know, on my jobs, who may be independent contractors, I want to make sure they're certified and gone to school and meet a drug testing program, and I've designed all these things. Does that make them employees? Well, this is the point. None of these factors are dispositive, right? I mean, all other things that are important to you, this is what is your business? Isn't the formal structure of the contract something to be taken into account? Of course it's something to be taken into account. In fact, it's a totality of the circumstances inquiry. See, that's the problem that I think at least Judge Lopez and I have been worrying about with you out loud. The scales may tip in your favor. I kind of think if I were in a jury, I would find these guys were employees. But doesn't a jury get to decide that? Well, Your Honor, this Court is recognizing by now that this is a question of law, and it should be. This is a question about who this statute was designed to apply to. This is a difficult question. It's a difficult concept, as we pointed out in our reply brief. I mean, what does this even actually mean, that the economic reality of the situation means that they were dependent on direct TV for work? It is a difficult inquiry for a lay jury to understand. I know, but that's the problem with our system. We send all kinds of complicated cases to lay juries. For example, who decided how much the technicians were paid? Direct TV set the rates and delegated to the company. Well, it set the rates that it would pay the contractor. Set the rates that they would pay. And isn't there some evidence that some contractors either kept a little bit of it for themselves and passed it on, or in one case, for reasons I can't possibly understand, the contractor paid more than what direct TV gave them. Direct TV delegated to the contracting companies the authority to decide which, how much of what direct TV paid the contracting companies. Okay, so isn't that a fact that cuts in favor of them not being employees of direct TV? Let me, let me, I don't think so. I think, as this Court recognized in Bonnet, it just means that the contracting companies are joint employers, right? And remember that in the Hall against direct TV case that the Fourth Circuit considered, it said, look, if we're going to engage in a joint employment analysis where we consider the joint employers one employment, the first thing you have to do is see if these guys are joint employers. And if they're joint employers, then you see whether they are dependent on them in the aggregate. Conceptually, you know, we're coming at, it doesn't matter which way we come at this, you've got to be an employee of somebody to be a joint employee, don't you? That's right. Okay, so who, and, and here what you're saying is they, they must be employees of the independent contractor, of the contractor companies? All of the F- Are they, are they employees of the contracting companies? We think they are. They should be under the FLSA. And if, and if you, and if you adopt, if you, as this Court has recognized in Chau A-1, Chau against A-1 and in, in the Bonnet case, when we're looking at a joint employment context, we're looking at what this one employment is. All right? So now let's do, is engage in that analysis. Okay, so, so, so use that analysis. That's what the, that's why the pay thing troubles me. Who's controlling the amount of pay that they get? The second company, right? Both of them are. No, no. The second company is controlling. Because the proposition proves too much. Whenever I deal with an independent contractor, I pay him a specific amount. That, of course, may, may have some effect on what he's willing to pay his employees. But it doesn't make them my employees. Well, Your Honor- So when I say to this second guy, you decide what to pay the technicians. I don't care. You can pay them twice what I give you. You can pay them half what I give you. Doesn't that suggest that they're not my employees? It is, it is certainly a factor to be considered within the totality. So if we have that factor and a couple other factors, when do we, when do we get out of the summary judgment arena? Well, for one, you'd have to have a completely different record here. I mean, given the undisputed facts, that's one. But second of all, I mean, this is really important on the- The undisputed facts are not that they pay them exactly what DirecTV pays the, pays them. In fact, otherwise they'd make no profit. That fact is not, that fact is not in dispute, though. So that's not a fact that goes to the jury.  Okay. And then the contracting company has to decide how much. That's not a factual dispute. Now, the legal effect of that, combined with the totality- So it's a legal effect on their side of the scale, if you will. You've got a lot of legal effects on your side of the scale. So tell me how many, tell me how far the scale has to go down to create, to make this a summary judgment case rather than a jury's case. I think it's a question for the judge, for the district court judge who's charged, who's charged with deciding the fact of law. No, no, no, she's not charged with deciding any facts. Because he's only, he's only in charge of deciding what facts are undisputed. He's in charge of deciding what material facts are in dispute. And so if he's engaging in his legal analysis to determine- We review DeNovo. We review his summary judgment DeNovo. So you can't win by telling me it's a job for the district judge. Well, you asked- So it's, it's, I've got to figure out where, where, when the scale tips too far. Tell me what the test is. And that's what I've been trying to do. What the district court does is when he engages in the legal analysis, if he determines that there are material facts in dispute, then he sends those facts to the jury. So let's assume you have no undisputed facts. Fifty percent of them cut for their side. Fifty percent go to your side. Does the judge decide the case is a matter of law or does he send it to the jury? I'm sorry, could you say that one more time? No undisputed facts. Everybody agrees on the facts. Right. A lot of them suggest that they're independent contractors. A lot of them suggest they're employees. Does the judge decide the case is a matter of law? If there are no undisputed facts- Yes, that's, that was my hypothetical. If it's just a difficult question- Don't, don't, that's my, I asked your question. That's my hypothetical. No undisputed facts. Many of them suggest independent contractor status. Many of them suggest employee status. Is that a question of law for the court or a question of fact for the jury? Question of law. So the totality of the circumstances standard, that, that is a question of law? It's a question of law. Is this court recognizing it by that? Right. It's almost like, think of another question of law, which is contract interpretation. So I'm sorry. So Judge Hurwitz is hypothetical. He says you have undisputed historical facts, but you've got some factors in these multi-factor tests that seem to favor the employee conclusion. Some favor the independent contractor conclusion. So you've got factors pointing both ways. You're saying, I think, I mean that's the, the ultimate determination is the totality of the circumstances. You seem to be saying that's a question for the judge to decide and not the jury? It is a question for the judge to decide because it's a question of law. Even if it's a difficult question, it's still a question of law. Just like I was trying to get to with the interpretation of a contract. It can be difficult to understand and figure out, and there could be good arguments on both sides about what this unambiguous contract means. But it's still a question of law for the judge to decide. In your view, in this case, on this record, the judge was permitted to decide, looking at the totality of the circumstances, that no reasonable jury could have found in favor of Direct TV. No reasonable jury could have. When you look at these undisputed facts, I mean, Direct TV noted all these other cases about the cable installers, but none of them had this record. None of them had a situation where all of these facts were true and undisputed. That Direct TV had the undisputed, unfettered right to hire and fire. That they were the face of Direct TV. That they were an undisputed and integral part of the business. That Direct TV had, that they were selling Direct TV's equipment in the homes of Direct TV's, they were wearing Direct TV uniforms. And Direct TV set the performance standards and monitored them. All of them. I keep thinking, as I hear of Judge Wardlaw's question about what the special verdict form might look like in a case like this. I mean, you practice in this field. Do juries routinely decide these kinds of cases? I mean, it seems, and maybe they do. Do they? They do. They do. I mean, I don't take the 13 to 1 to prove anything to us. But apparently some of these cases are going to juries, right? Some of these cases are going to juries. And what, is the jury's told, decided the totality of the circumstances? Yes. Yeah. So in those cases, your view is that to the extent the historical facts were not disputed, that's an incorrect way to proceed. I do think. Those cases may have disputed historical facts. Right. I do think that it is a question of law for the judge to decide. Now, on the state law questions, this is even easier. On the state law questions. Did you just say it's a question of law for the jury to decide? Maybe I misunderstood what you said. No, I think the jury does decide it on a totality of the circumstances. I see that my time is up, but I'd like to. I do have a question about Bonnett. Okay, but we're not going to go too much over this. Yes. That's right. Right? I'm sorry. Bonnett seems to say that the Supreme Court has recognized that this is essentially a factual question. Bonnett says that what the legal effect of the facts are is a legal question because we're trying to figure out who is supposed to be encompassed within the statute. All right. Sure, workers say, okay, forget it. I don't see a Bonnett holding saying what you said it did, but I'll re-read it. Okay. It's in the briefs, so you can check it. Thank you very much, counsel. I'm going to try to be very fast. First, let me just quickly read the key language from Narayan, which I think really resolves this. If we are to have multiple factors, we should also have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome is one in which the trier of fact plays the principal part. That's on page 901, I think. The other point I wanted to make on a factual question about exclusivity, which was at the beginning of Mr. Calabro's argument, two of the principals of the contractors specifically said that their technicians were permitted to and did work for other companies, including Dish Network in the case of one of the technicians for, I think it was MPJ. And the amount that they chose to work for the other companies, first of all, it's in dispute how much they did, but I also think it's irrelevant. They had the option, they had absolute freedom to choose what the best jobs were for them in terms of maximizing their revenues. If they were going to get more revenue from doing an installation at Dish instead of at DirecTV, then they could take that job. So that actually is one of the many factors that I think weighs on the scale of finding them to be independent. With that, unless there are further questions. No. Thank you, counsel. I figured they might not. Lasseter versus DirecTV is submitted, and this session of the court is adjourned for today. Thank you both. All rise.
judges: Nguyen, Owens, Baylson